SMITH ET AL. *v.* CHILDRESS ET AL.

[80 South. 345, Division A.]

1. MORTGAGE. *Intervening purchaser. Second mortgage extending first. Statute.*

Where a second mortgage, under which a foreclosure was had, was not taken as payment or cancellation of a first mortgage lien, but was a renewal or extension of the first mortgage, all of which fullly and regularly appeared on its face and upon the registration record, the lien of the first mortgage was simply continued without interruption by and under the new mortgage. as against purchasers who bought with notice between the time of the execution and record of the two mortgages.

2. SAME.

In such case the new mortgage which was a renewal or substitute of the old, extended and continued all of the rights and remedies secured by the old mortgage.

3. SAME.

Section 2796 of the Code of 1906 (Hemingway's Code, section 2297), has reference only to the requirement of registration of renewals and extensions of mortgages, to prevent bar by limitation, and has no direct bearing on this case.

4. MORTGAGE. *Foreclosure. Title of purchasers.*

The fact alone that the proceeds of a sale under a mortgage amounted to more than the debt due by the mortgagors can have no effect upon the title of the purchaser at the foreclosure sale.

APPEAL from the chancery court of Madison county. HON. O. B. TAYLOR, Chancellor.

Suit between G. E. Smith and others and R. H. Childress and others. From a judgment for the latter, the former appeals.

The facts are fully stated in the opinion of the court.

*H. B. Greaves,* for appellant.

The question involved in this suit—viz: "Whether the title acquired by the appellant by his purchase from H. B. Greaves, Trustee, vested a title to them in the lands, free of appellees' claims," allows but little field for research, as it is strictly confined to the interpretation by this court of section 2796 of the Code of 1906. I suggest to the court the following:

1st—That appellees bought this land with full knowledge of the existence of Exhibit "A," which was duly recorded and showed that more that eighteen hundred dollars was still due on Exhibit "A" and a lien on the land, and had two years before the note which was extended and renewed, became due.

2nd—That the eighteen hundred dollar note was duly renewed and extended and the instrument which was duly executed as a renewal and extension of the same was dated the 19th day of December, 1911, and filed for record within less than thirty days after the maturity of the eighteen hundred dollar note; and

3rd—That the renewal deed of trust and notes had written in box-car letters in the face of the deed of trust that the new notes were the balance due under the first deed of trust recorded in A. G. page 185, dated Feb. 26, 1907, and "which is hereby renewed and extended," giving notice to the world that the first deed of trust was not intended to be cancelled and was not cancelled; and that it was merged in the second deed of trust under which the sale was made.

Section 2796 was enacted to protect creditors and purchasers for value without notice, neither of which Childress can claim to be. What harm could possibly come to him by a foreclosure under either instrument which could have been done?

The opinion of CALHOUN, Justice, in *Klaus* v. *Moore,* 77 Miss. 704, in that part of his opinion contained in the 4th paragraph near the bottom of page 704, is pecu-

liarly applicable here. CALHOUN says, referring to the party who stood in the same condition there that Childress does here: "He took his junior trust conveyance before there was the appearance of any bar on record, and is neither creditor nor subsequent purchaser within the meaning of the statute."

Appellees in this case acquired their title in 1909 while Exhibit "A" was then a lien on the lands. They purchased from Hinton and their title was subordinate to the deed of trust given by Hinton, which deed of trust the law provided by section 2796, could be renewed and extended indefinitely, either by endorsement on the record, or by a new instrument duly executed and filed for record, which was done in this instant case.

A case very similar to the case at bar is *Bank of Lexington* v. *Cooper,* reported in 115 Miss. 782 (S. C., 76 So. 659). The equitable doctrine, which declares that where one or more innocent persons must suffer, the loss must fall on the person whose negligence occasioned the loss, is strongly applicable here against appellees, in favor of the appellants.

The opinion of Justice STEPHENS in the *Bank of Lexington case,* 115 Miss., *supra,* covers this case very accurately, especially in the language used on page 798.

*W. H. & R. H. Powell,* for appellees.

If C. L. Hinton had no title on December 19, 1911, the date of the deed of trust under which appellants purchased, and he had none because he conveyed any title he had on September 28, 1909, to the appellees, then, of course, appellees acquired no title from the trustees through the sale made by him. It cannot be said that the first deed of trust, February 26, 1907, can be enforced, because the land sold under the second deed of trust for more than was due, and besides, it is barred by limitation.

But if we are wrong in this, appellants cannot recover upon the facts admitted or not denied in the pleadings. It is elementary that when a fact is averred in the bill and denied by the answer that the complainant must prove the fact. No proof was introduced except the agreed state of facts, and this did not aid the averments denied by the answer to which we will now call your attention.

It was averred in the bill that the first deed of trust was never intended to be paid by the second deed of trust and that it was to be kept alive and renewed by the second deed of trust. Now let us see how appellants stand on this. On the first page of the answer to the bill, being on page 11 of the record, the appellees, (defendants below), stated: "They aver the truth to be that the deed of trust in Book A. G. page 185, was in fact paid and cancelled by the execution and delivery of said deed of trust recorded in Book A. Q. page 472 and they deny that there was no intention of cancelling same."

This flat denial of the allegation of the bill put complainants upon proof and as no proof was offered, such denial stands as the truth and therefore, the first deed of trust, 1907, cannot be considered by the court at all. Therefore, further, as appellees become the owners of the land sued for by deed, truly recorded in 1909, between the execution of the ones in 1907 and 1911, Hinton had no title to convey in 1911, at the execution of the deed of trust under which the sale was made through which appellants claim and hence they acquired no title by such purchase and hence cannot maintain the bill filed in this cause.

Again, on the second page of the answer, see page 12 of the record, appellees stated as follows: "They deny that there was never any intention of cancelling the first deed of trust (1907) and they deny that the whole purpose of said deed of trust was to renew and extend the eighteen hundred dollars and keep alive the same, and that this fully appears of record." No proof was offer-

ed to rebut this, and therefore, the allegation of the bill stands unproven and amounts to nothing.

So it appears, that so far as the proof goes, the first deed of trust (1907) was, and is, "as dead as Hector" when the sale under the second deed of trust (1911) was made, and therefore, the sale under this deed of trust conferred no title because appellees had become the owners in 1909 under deed from Hinton, two years before the execution of this deed of trust by him.

· So we say: 1st—The deed of trust executed in 1907 by Hinton can in no way aid appellants, because—(a) Under the proof and pleadings, it was paid and in operative, and (b) The other land sold for nearly one thousand dollars more than was due the beneficiary; and (c) That if mistaken in this the sale at which appellants purchased was not made under this deed of trust but was expressedly made under the deed of trust executed in 1911.

2nd—That the sale under the deed of trust executed in 1911 conferred no title on appellants, because: (a) At the execution of same, C. L. Hinton, the mortgagor, had no title to convey, and (b) Whatever title he had was conveyed to appellees in 1909 by deed which had been duly recorded long before the execution of said deed of trust.

3rd—The learned court below has found as a fact and as the law that appellant is not entitled to any relief and his decree will not be reversed unless manifestly wrong.

"The presumption in favor of a decree includes conclusions both of law and fact. It will not be disturbed unless shown to be clearly wrong, being analogous in this respect to the verdict of a jury." *Partee* v. *Bedford,* 51 Miss. 84.

"Unless it clearly appears that the Chancellor was wrong, the decree must be affirmed." *Coffee* v. *Coffee,* 24 So. 262; *Bank of Lauderdale* v. *Cole,* 111 Miss. 39; *Plantation Co.* v. *Heading Co.,* 104 Miss. 131; *Brooks-Scanlon Co.* v. *Stogner,* 114 Miss. 736.

We earnestly contend that this case should be prompt-
ly affirmed. We have received no brief from appellant
and are at a loss to conceive what kind of an argument
he will make, but we will answer his brief when we re-
ceive it, should we consider that it demands a reply.

HOLDEN, J., delivered the opinion of the court.

The land involved in this case was purchased by ap-
pellants at a foreclosure sale by the trustee in a deed of
trust. The trust deed under which the sale was made
was a renewal or extension of a prior deed of trust. The
renewal deed of trust under which the sale was made
recited the following:

"The money here secured as evidenced by the above
promissory notes includes the balance due on a certain
deed of trust which was executed by me on the 26th
day of February, 1907, and which is hereby renewed and
extended to H. B. Greaves, trustee, for the use of John
Livelar, and duly entered of record in said county in
Book A. G., page 185, the money being then borrowed to
pay on the purchase money of the above-described
lands."

This second or new mortgage was executed as a re-
newal of the old deed of trust. Before the execution of
and before said sale under the renewal mortgage, and
after the date of the execution of the first mortgage, the
appellees acquired title by purchase from the mortgagor
to the land involved in this suit.

The appellants contend that the prior lien of the first
mortgage, which was renewed by the second mortgage,
was continued and was superior to the title acquired by
the appellees, who were intervening incumbrancers; and
that the sale by the trustee under the second mortgage
conveyed a valid title to appellants as against the inter-
vening incumbrancers, appellees. The appellees contend
that, while the lien in the first mortgage was prior to
their claim, yet the title acquired by appellants at the

trustee's sale under the second mortgage cannot prevail against the title of appellees, for the reason that the foreclosure sale should have been had under the first mortgage, and, as the sale was made under the second mortgage, the prior lien was lost as against appellees' intervening title. Appellants contend that section 2796 is involved and that under its terms this case should be reversed.

We think the intervening title conveyed to appellee by deed from the mortgagor was subject to the prior mortgage lien of record, which was renewed and extended by the execution of the second mortgage, under foreclosure of which the appellants acquired the land; and upon this title appellants may rely as against that of appellees. The second mortgage, under which the foreclosure was had, was not taken as payment or cancellation of the first mortgage lien, but was a renewal or extension of the old, all of which fully and regularly appeared upon its face and upon the registration record. Therefore the lien of the original mortgage was simply continued without interruption, by and under the new mortgage, as against the appellees, who were intervening purchasers, or incumbrancers, with notice. The new mortgage, which was a renewal or substitute of the old, extended and continued all of the rights and remedies secured by the old mortgage.

Section 2796, Code of 1906, section 2297, Hemingway's Code, has reference only to the requirement of registration of renewals and extensions of mortgages to prevent bar by limitation, and has no direct bearing on this case —except that it is shown to have been complied with as to notice of renewal, and may indicate, by inference, the correctness of our holding here—as the intervening title of appellee was acquired with notice of the first mortgage before the execution of and sale under the renewal mortgage.

The fact alone that the proceeds of the sale under the mortgage amounted to more than the debt due by the

mortgagor can have no effect upon the title of the purchaser at the foreclosure sale.

Appellants' title to the land here in question obtained through the sale under the renewal mortgage is valid and must prevail as against the intervening claim of appellees. *B. F. Howell et al.* v. *A. H. Bush,* 54 Miss. 437-446.; *Britton & Mayson et al.* v. *Jane H. Criswell et al.,* 63 Miss. 394; 27 Cyc. 1413; 19 R. C. L. 235.

The judgment of the lower court is reversed, and judgment entered here for appellants.

Reversed, and judgment entered.

*Reversed.*